UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHN WALKER,

                        Plaintiff,

v.

SGT. MILLER, *et al.*,

                        Defendants.

Case No. 3:15-cv-00608-MMD-WGC

**ORDER**

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). Plaintiff filed his original complaint on December 14, 2015, and in the December 22, 2016 screening order, he was allowed to proceed with an Eighth Amendment failure to protect claim against Miller, Case, Scott [Kahler][1], Skulstad, and Meares. (ECF No. 4.) The claim was based on allegations that Plaintiff requested protective segregation three times after a local media report on Plaintiff's alleged crime of lewd activities with a minor over fourteen in California, but the requests were denied because Plaintiff could not identify a specific threat. Then, on December 11, 2013, inmate Stubbs, whom Plaintiff claims has a violent history, complained to Officers Miller and Case about having to work with "that child molester." This caused Plaintiff to worry and request a shift change, which was denied. The next day, Stubbs attacked Plaintiff in the culinary area where he worked by throwing boiling water and oil on him, causing serious injuries. The claim was dismissed as to Baca and Walsh, finding that Plaintiff failed to state

---

[1] Plaintiff refers to him as Scott, but the notice of appearance indicated his name is Scott Kahler.

cognizable claims against them because he did not allege they knew Plaintiff requested protective segregation.

On March 1, 2017, Plaintiff filed a motion to join additional parties to the case. (ECF No. 40.) He asked for leave to join Associate Warden Shreckengost and Warden Baca as he claimed that there was a shortage of correctional officers in the culinary area and staffing was the responsibility of these individuals. He also claimed that Baca implemented a policy that forced physically vulnerable prisoners to work in potentially dangerous situations. He further sought to dismiss Skulstad and Scott [Kahler], stating they were not directly responsible for Plaintiff's treatment.

On March 7, 2017, the court granted Plaintiff's motion to the extent that the court gave him leave to file a motion to amend after the expiration of the deadline to do so. (ECF No. 44.) The court advised Plaintiff that any such motion had to include a proposed amended pleading, and gave him seven days to lodge his motion and proposed amended complaint, and permitted the filing of a response and reply briefs.

Plaintiff filed his motion and proposed amended complaint. (ECF No. 49.) The court granted the motion and ordered the Clerk to file the amended complaint. (ECF No. 51.) The court ordered Skulstad and Scott [Kahler] dismissed pursuant to Plaintiff's request. (*Id*.) The court ordered the Attorney General's Office to file a notice advising whether it accepted service for Baca and Shreckengost. (*Id*.) On April 4, 2017, the Attorney General's Office filed a notice of acceptance of service on behalf of Shreckengost and Baca (and it had previously accepted service for Case, Meares and Miller). (ECF No. 57.) On May 9, 2017, Defendants filed an errata to the notice of acceptance of service, noting that while it previously accepted service on behalf of Baca, this was in error because Baca had been dismissed with prejudice in the original screening order. (ECF No. 69.) They simultaneously filed a motion for clarification noting that the amended complaint failed to remove Skulstad and Scott [Kahler], and argued that the amended complaint included the same claims against Baca that had previously been dismissed with prejudice. (ECF No. 70.)

The court held a hearing on May 22, 2017, where it discussed the status of Scott [Kahler], Skulstad and Baca. (Minutes at ECF No. 73.) The court ordered that Scott [Kahler] and Skulstad were dismissed. (*Id*.) The court amended its prior order, and stated that the motion for leave to amend was not granted with respect to Baca, but gave Plaintiff leave to file a supplemental pleading with respect to Baca. (*Id*.) Defendants were permitted to file a response and Plaintiff was allowed to file a reply. (*Id*.)

Plaintiff timely filed his supplemental pleading on June 2, 2017. (ECF No. 74.) Defendants filed their response on June 12, 2017. (ECF No. 75.) Plaintiff has not filed a reply. The court will now address the supplemental pleading.

## II. DISCUSSION

### A. Standard of Review

In reviewing the complaint under 12(b)(6) [and 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A(b)(1), the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustee of Rex. Hosp.* 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

A complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation omitted). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

### B. Eighth Amendment Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal and often violent, conduct' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (citation omitted). To establish a violation of this duty, the prisoner must establish that the prison officials were "deliberately" indifferent to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834.

First, "the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. "[A] prison official's act or omission must result in the denial of the 'minimal civilized measures of life's necessities.'" *Id*. (citation omitted). When a prisoner claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citations omitted). This is a question of fact, and must be "decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). To satisfy this element of the claim, "the harm actually suffered need not have been the most likely result among this range of outcomes." *Id*. at 1076 (citation omitted). It does not matter "whether a prisoner faces an excessive risk … for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Second, the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511

U.S. at 837. Negligence is not sufficient. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Liability may only follow if a prison official "knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Deliberate indifference "may be established through an 'inference from circumstantial evidence' or 'from the very fact that the risk was obvious.'" *Cortez v. Skol,* 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 842). The "failure to give advance notice of a specific threat is not dispositive[.]" *Labatad v. Corr. Corp. of Amer.*, 714 F.3d 1155, 1161 (9th Cir. 2013).

### C. Analysis of Supplemental Pleading

The supplemental pleading (ECF No. 74), alleges that Baca was the warden at NNCC and is responsible to the director for administration of his institution, including executing policies, regulations and procedures pertaining to custody, care and training. He avers that this responsibility extends to proper staffing of the institution, and claims that if there is a shortage of trained personnel, Baca was required to contact the director and obtain the necessary officers to run the prison. Plaintiff alleges that Baca was aware of the lay out of the culinary with its fourteen rooms that required inmate workers; that the culinary required twenty-two inmate workers for shift; that the regulations required direct supervision of medium security inmate work detail; that NNCC was a medium custody prison; that culinary required the use of knives, cleavers, ice picks, choppers, boiling oil, walk-in ovens and open flames to prepare food; that Administrative Regulation (AR) 411 requires direct supervision of the use of those tools and materials; that Baca made inspection tours of all areas and supervised staffing; he knew the culinary needed more than two officers to provide direct supervision over the twenty-two inmates working in the culinary; knew how dangerous the culinary could be. He further alleges that Baca refused to assign the necessary personnel to supervise the area, and that Baca was aware, based on previous incidents, of the risk of serious harm to Plaintiff, and yet disregarded that risk. He claims that Baca had been reporting a problem of understaffing for years, but chose to reduce the number of officers in the culinary, which elevated the risk of assault.

///

Plaintiff also alleges that Baca instituted a policy of forcing prisoners to work, including those who were physically vulnerable, such as Plaintiff, and placed such prisoners in work assignments with prisoners who were known to be violent. Plaintiff claims that he was physically vulnerable because he was accused of a sex offense published by the mass media, and he requested protective segregation, but due to Baca's policy, he had to work in the culinary.

The court finds Plaintiff's supplemental pleading states a colorable failure to protect claim against Baca under the Eighth Amendment. Plaintiff's allegations are premised on an understaffing policy, and that Baca knew of the risks presented by such a policy. Taking the allegations as true, and construing them liberally, he asserts that Baca had knowledge of the vulnerable position Plaintiff was in by virtue of the mass media report regarding the alleged sexual crime, but nevertheless, Plaintiff was forced to work in the culinary along with other inmates who had a history of violence.

Defendants' response focuses on *evidence* and what Plaintiff is required to *prove* to succeed on his claim against Baca, but that is the court's focus at summary judgment or trial, and not in screening a case under 28 U.S.C. § 1915 or § 1915A.

### III. CONCLUSION

Plaintiff is **GRANTED LEAVE TO PROCEED** with his supplemental pleading (ECF No. 74) against Baca (which shall be considered hereinafter, along with the amended complaint, ECF No. 52).

The Attorney General's Office has **TEN DAYS** from the date of this Order to file a notice of acceptance of service on behalf of Baca or file his last known address under seal. If service is accepted on behalf of Baca, an answer or other responsive pleading must be filed within **TWENTY-ONE** days of the date the notice of acceptance of service is filed.

**IT IS SO ORDERED.**

DATED: June 27, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE